UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DOMINICK MOORE,

                          Petitioner,

        v.                                              9:20-CV-0012
                                                        (DNH)

MARY VANN, Superintendent,

                          Respondent.

---

APPEARANCES:                                    OF COUNSEL:

DOMINICK MOORE
Petitioner, pro se
17-A-4676
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. LETITIA JAMES                              HANNAH S. LONG, ESQ.
Attorney for Respondent                         Assistant Attorney General
Office of the Attorney General
28 Liberty Street
New York, New York 10005

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

        Pro se petitioner Dominick Moore ("Moore" or "petitioner") seeks federal habeas relief

pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Exhibits ("Ex."); Dkt.

No. 4, Affirmation.  Upon request, respondent was granted permission to move to dismiss the

petition on threshold grounds other than untimeliness.  Dkt. No. 12, Letter Request; Dkt. No.

13, Text Order; Dkt. No. 22-1; Affirmation and Exhibits in Support; Dkt. No. 22-2,

Memorandum of Law in Support ("Resp. Mem.").  Moore did not file a reply; however, he has inquired into the status of the petition.  Dkt. No. 24, Status Inquiry.

## II.  **BACKGROUND**

### A.  **Criminal Conviction**

Petitioner challenges a 2017 judgment of conviction in Oneida County, upon his guilty plea, of second degree criminal possession of a weapon.  Pet. at 1.

On January 22, 2017, two officers, DeMarco and Bruzzese, were driving in a marked patrol car when Bruzzese recognized the petitioner.  Dkt. No. 22-1 at 35-36.  Bruzzese knew petitioner from previous law enforcement contacts and he recalled that there was an active Utica City Court Bench Warrant, dated January 23, 2017, issued for petitioner's arrest.  *Id.* at 5, 36.  Bruzzese confirmed the outstanding warrant via the police department's computerized record keeping system, and both officers approached petitioner and asked him to present identification.  *Id.* at 26-27, 36-37.  When petitioner fled, the officers chased and apprehended him, and, upon searching him, found a loaded semi-automatic handgun in the pocket of an outer garment he was wearing.  *Id.* at 37.

On March 9, 2017, petitioner was indicted for Second and Third Degree Criminal Possession of a Weapon and Criminal Possession of a Firearm.  Dkt. No. 22-1 at 7-8.  In a counseled motion, petitioner sought suppression of the gun seized from him.  Dkt. No. 22-1 at 17-19.  Specifically, petitioner argued the seizure was in violation of the Fourth Amendment because the officers obtained the evidence without a warrant or any probable cause.  *Id.* at 18.  Petitioner alleged that he had no interaction with either DeMarco or Bruzzese in the past; therefore, neither officer could claim that they recognized petitioner

2

from prior dealings with law enforcement.  *Id.* at 18, 27, 31.  In sum, petitioner contended that the officers used the gun as a post-hoc justification for probable cause for an otherwise unlawful stop and seizure.  *Id.* at 63.

On August 16, 2017, a *Mapp* suppression hearing was conducted in Oneida County Court.  Dkt. No. 22-1 at 67-108.  On August 18, 2017, the court issued an order denying petitioner's suppression motion.  *Id.* at 34-40.  Specifically, the County Court credited Bruzzese's testimony that he recognized petitioner, and confirmed the existence of an outstanding warrant.  *Id.* at 39-40.  This gave the officers authorization to approach and question petitioner.  *Id.*  Once petitioner's identity was confirmed, the officers had probable cause to arrest petitioner and search him.  *Id.* at 40.  Because the "subsequent seizure of the handgun was . . . pursuant to a valid search incident to that arrest," the evidence was lawfully seized and admissible for trial.  *Id.*

On September 12, 2017, petitioner entered a guilty plea.  Dkt. No. 22-1 at 109-31.  During the plea, petitioner stated he understood the proceedings, was not under the influence of drugs or alcohol, acknowledged the trial rights he was forfeiting, and agreed to waive his right to appeal.  *Id.* at 123-27.  Petitioner allocuted to the facts of the crime and the court accepted the plea.  *Id.* at 127-30.  On November 9, 2017, petitioner was sentenced to five years' imprisonment and five years' post-release supervision.  *Id.* at 132-35.

## B.  Unperfected Direct Appeal

Seven months after sentencing, on June 1, 2018, petitioner asked the Fourth Department for an extension of time to file a late notice of appeal in a counseled application.  Dkt. No. 22-1 at 44.

3

On October 29, 2018, the Fourth Department issued an order conditionally granting petitioner's motion to extend the time to file his direct appeal contingent upon petitioner serving the notice of appeal on the People on or before November 28, 2018. *Id.* at 48-49.

In a pro se letter, petitioner indicated to the Appellate Division that he served a proof of service on the District Attorney's Office; however, the letter was undated and did not include a copy of the proof of service. *Id.* at 52. A Fourth Department Clerk's Office staff member informed respondent's counsel "that she was unable to locate proof of service by [petitioner] in compliance with the condition stated in the Fourth Department's order deeming his notice of appeal timely." *Id.* at 3.

On April 9, 2019, petitioner presented the Fourth Department with a motion for bail and stated his intention to continue his direct appeal. Dkt. No. 22-1 at 51-54. On May 19, 2019, the Fourth Department denied petitioner's motion for bail; however, the Appellate Division did not make any ruling on the status of petitioner's direct appeal. *Id.* at 58. In sum, "[o]n multiple occasions from February to May of this year, staff members of the Fourth Department Clerk's Office advised [counsel for respondent] . . . that petitioner's direct appeal remained unperfected, that counsel had not yet been assigned, and that there had been no motion to dismiss the appeal." *Id.* at 3.

## C. State Collateral Attacks

On June 19, 2018, petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 ("440 motion"). Ex. at 10, 13, 17. Petitioner argued he was entitled to relief because (1) "material evidence adduced by the people at a trial resulting in the judgment was procured in violation of the [petitioner's] rights under the constitution of this state or of the United States," and (2) "the judgment was obtained in

4

violation of one of his constitutional rights[.]" *Id.* at 4.

On July 6, 2018, the county court denied petitioner's 440 motion holding that "the very limited and grossly inaccurate sworn allegations set forth in [petitioner's] papers do not support his self-serving and conclusory claim that the judgment of conviction in this matter was obtained in violation of his constitutional rights." *Id.* at 6.

Petitioner then moved to reargue the county court's denial of his 440 motion. Ex. at 9-10. On August 21, 2018, the court denied petitioner's motion because "[t]he Criminal Procedure Law does not provide for reargument following denial of a [440] motion . . . [instead, petitioner's] remedy is to seek permission for leave to appeal the denial of his motion from the Appellate Division, Fourth Department." *Id.* at 10. No application for leave to appeal was filed.

Instead, on September 14, 2018, petitioner filed a motion to dismiss and vacate his judgment pursuant to the New York Civil Practice Law and Rules ("CPLR") § 3211. Ex. at 12-14. The motion was dismissed. *Id.* at 13-14. Specifically, the county court held that petitioner's "reliance on the CPLR to collaterally attack [his] judgment of conviction in a criminal case [wa]s misplaced." *Id.* at 13. This is because the CPLR does not apply to criminal actions and proceedings, New York's Criminal Procedure Law does instead. *Id.* at 14.

Petitioner again moved to reargue the county court's denial of his motion to dismiss, this time pursuant to CPLR § 2221(d). Ex. at 16-22. Petitioner alleged that his due process rights were violated because his previous motion to dismiss was denied "based upon reasons other than the validity of his claims[.]" *Id.* at 18.

The court denied petitioner's motion, emphasizing that there was no merit to his

claims and that, although several of his prior motions were inappropriately filed, the merits of each motion had been considered and discussed in the court's orders. *Id.* at 18-21. The court again informed petitioner that the appropriate procedural vehicle to pursue further remedies was an application for leave to appeal to the Fourth Department. *Id.* at 21. Moreover, the court "prohibited [petitioner] from filing any further *pro-se* motions to vacate the judgment of conviction, or to reargue the denial of such a motion, without first seeking leave to do so from th[e county c]ourt[.]" *Id.* at 22.

## III. <u>THE PETITION</u>

Petitioner contends that he is entitled to federal habeas relief on the following grounds: (1) his arrest and subsequent indictment were unlawful because the bench warrant upon which it was based was improperly issued, (Pet. at 5-6); (2) he was twice prosecuted for the same misdemeanor charge, which ultimately resulted in the issuance of the bench warrant, which he had previously resolved by paying a fine (*id.* at 7-8); (3) the trial court erred in deciding to suppress evidence from petitioner's arrest which would have demonstrated that the arrest was without probable cause (*id.* at 8-9); and (4) petitioner was subjected to inconsistent sentencing (*id.* at 10-11).

## IV. <u>DISCUSSION</u>

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court

prior to raising them in a federal habeas corpus petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Exhaustion requirements are slightly different for those claims which are records-based versus those that are not.

> In New York, to invoke one complete round of the State's established appellate review process, for claims that are on the record, a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal.

*Campos v. Smith*, No. 1:15-CV-6580, 2017 WL 1025850, at *2 (E.D.N.Y. Mar. 15, 2017) (citing *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (internal quotation marks omitted). "Appellate Division rules provide that an unperfected criminal appeal is deemed abandoned in all cases where no application has been made . . . within nine months of the date of the notice of appeal unless the time to perfect shall have been extended[.]" *Id.*, 2017 WL 1025850, at *3 (internal quotation marks and citations omitted).

Where an extension has been granted, but the appeal still not perfected, "petitioner's judgment will only be considered final thirty days after the Appellate Division dismissed the appeal as abandoned and if petitioner does not seek leave to appeal to the New York Court

of Appeals." *Id.* (internal quotation marks and citations omitted).

Any motion for dismissal, made either by the court or prosecution, must give the petitioner notice and an opportunity to be heard. CPL § 470.60 (providing in pertinent part that "[a]t any time after an appeal has been taken and before determination thereof, . . . upon motion of the respondent or [Court], [may] dismiss such appeal . . . [however s]uch motion must be made upon reasonable notice to the appellant and opportunity to be heard.").

It is important to note that "no court in this Circuit has ever held that an unperfected appeal, which has not been formally dismissed by the state court, can be deemed a 'final judgement' for habeas corpus purposes." *Best v. New York City Police Dept. Sex Offender Unit*, No. 1:20-CV-2382, 2020 WL 2933441, at *3 (E.D.N.Y. June 3, 2020).[1]

Conversely, if the claims are outside the record, a petitioner can "exhaust them by bringing a motion to vacate the judgment in the trial court under C[PL] § 440.10, and then by seeking leave to appeal to the Appellate Division is the petitioner receives an adverse ruling." *Campos*, 2017 WL 1025850, at *2 (citing CPL § 450.15(1)). Without seeking leave to appeal, the claim is not properly exhausted. *Id.* "There is no time limit within which an individual must bring a § 440.10 motion." *Id.* (citing CPL § 440.10(1)).

Here, petitioner has challenged (1) the underlying proceedings resulting in the warrant which led to his arrest; (2) his actual arrest; (3) the suppression hearing; and (4) his sentencing. None of these matters have been presented to the highest state courts able to consider them. Petitioner's direct appeal – during which he can arguably challenge the

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).

validity of his appeal waiver, suppression, and sentencing issues – is unperfected.  *See* CPL § 710.70 (indicating that an order denying a suppression motion "may be reviewed upon an appeal . . . notwithstanding the fact that such judgment is entered upon a plea of guilty."); *People v. Thomas*, 34 N.Y.3d 545, 557-67 (explaining that "a waiver of the right to appeal is not an absolute bar to the taking of a first-tier direct appeal," and that "Appellate courts have an integral role in reviewing the validity of appeal waivers[.]").

However, petitioner has the means to further present these claims.  He can make a motion to the Fourth Department seeking an additional extension and explaining the inconsistency between the letter that he wrote to the court, indicating that he had filed a Notice of Appeal, and the court's records, which indicate no correspondence was received. *Campos*, 2017 WL 1025850, at *3.

The state courts have not yet had the ability to do their essential task in evaluating these claims.  They must be given the opportunity to do so.  *See Diguglielmo v. Senkowski*, 42 F. App'x. 492, 496 (2d Cir. 2002) (summary order) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so.  Accordingly, we dismiss DiGuglielmo's petition without prejudice.  This will allow DiGuglielmo to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[2]

There is no basis on the record before this Court to conclude that there is an absence

---

[2]   The Court notes that if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (per curiam) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).

of available state corrective process (*e.g.*, where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect petitioner's rights (*e.g.* where further pursuit would be futile).  28 U.S.C. § 2254(b)(1)(B)(i), (ii); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).  It is not futile to require him to complete exhaustion of his state court remedies before pursuing a federal habeas petition.

Further, having petitioner pursue the statutory exhaustion requirements will not negatively impact him because an unperfected appeal does not constitute a final judgment for statute of limitations purposes.  *Best*, 2020 WL 2933441, at *3.  Therefore, even though there has been several years' time between receiving the extension of the Notice of Appeal and this present action, the statute of limitations has not started running.

It is unclear whether petitioner's other claims regarding the validity of the underlying warrant are procedurally defaulted.  *See* CPL § 440.10(2) (barring collateral review if sufficient facts appeared on the record to have permitted the claim to be raised on direct review instead).

In the event that they are, those claims would be deemed exhausted and petitioner would have a "mixed petition."  *See Lebron v. Annucci*, No. 9:15-CV-0829 (GLS), 2016 WL 1312564, at *3 (N.D.N.Y. Apr. 4, 2016) ("Petitioner's claims may be deemed exhausted however, because petitioner no longer has a remaining avenue to raise the claims in state court due to his procedural default.").[3]

---

[3]  To the extent petitioner could claim he already engaged in such exhaustion via his previously filed collateral attacks, such claims are meritless.  First, it is unclear if these allegations were properly presented to the court in petitioner's 440 motion, as the claims were dismissed as conclusory and meritless.  *See Baldwin*, 541 U.S. at 29.  Second, petitioner never finished the exhaustion process because he never sought permission to appeal from the Appellate Division, despite the direct counsel to do so from the court.  *See Campos*, 2017 WL 1025850, at *2

When a district court is presented with a "mixed petition" containing both exhausted and unexhausted claims, it may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005).

A stay, instead of dismissal, is warranted when there is uncertainty surrounding the timeliness of the petition and it is unclear whether dismissal of the petition without prejudice would result in any future petition being subject to dismissal as time-barred. *Zarvela v. Artus*, 254 F.3d 374, 380 (2d Cir. 2001). However, for the reasons previously discussed, petitioner will not suffer prejudice with a dismissal.

In sum, whether the petition is wholly unexhausted or mixed, it is dismissed without prejudice. As previously noted, dismissal will have no impact on the statute of limitations because the limitations period cannot begin until there is a final judgment. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).

An unperfected appeal does not constitute a final judgment; therefore, there either must be another extension and proper service of the Notice of Appeal or a dismissal by the Appellate Division. *Best*, 2020 WL 2933441, at *3; *Campo*, 2017 WL 1025850, at *3. In the event the latter occurs, petitioner would be given notice and an opportunity to be heard, and the decision would either have to be appealed to the Court of Appeals or the time for such appeal would have to lapse in order for the statute of limitations to begin. *Campo*, 2017 WL 1025850, at *3; CPL § 470.60. Given the chain of events which must happen before the

---

(citing CPL § 450.15(1)). Third, to the extent petitioner says his claims were encompassed in his motions to dismiss pursuant to the CPLR, such motions were the incorrect method to challenge the elements of his underlying criminal conviction. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985) (explaining that petitioners must use the proper procedural vehicle to exhaust the merits of their claims in state court). Accordingly, such claims were not exhausted by petitioner's collateral attacks.

statute of limitations will be triggered, there is no reason to stay the appeal.

## IV.  CONCLUSION

Therefore, it is

ORDERED that

1.  Respondent's motion to dismiss, Dkt. No. 22, is **GRANTED**;

2.  The petition, Dkt. No. 1, is **DISMISSED WITHOUT PREJUDICE**;

3.  No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §  2253(c)(2) requires;[4]

4.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

5.  The Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.


Dated:  September 9, 2020
         Utica, New York.

_____
United States District Judge

---

[4]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

12